UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY EDWARD HALLUM,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendants. | Case No. 1:21-cv-00602-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 17). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 20).

Plaintiff argues as follows:

    1. The ALJ erred by finding the opinion from Dr. Voyles "not persuasive" without proper consideration of the supportability and consistency of the opinion with the record.

    2. The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer any reason for discounting Plaintiff's symptoms.

(ECF No. 11, p. 1).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

# I. ANALYSIS

## A. Medical Opinion of Dr. Voyles

Plaintiff first argues that the ALJ improperly evaluated the opinion of Plaintiff's treating physician, Stephanie Voyles, M.D., by failing to adequately address the supportability and consistency factors. (ECF No. 11, pp. 12-15). Plaintiff argues the ALJ erred in finding Dr. Voyle's opinion to be "overly restrictive" with respect to limitations on handling and fine manipulation as well as limitations on standing and walking. (*Id.* at p. 13). Specifically, Plaintiff contends that "[t]he ALJ's cursory dismissal of Dr. Voyle's well-supported opinion based upon grip strength, occasional cane use, and a single instance of normal gait fails to meet the substantial evidence standard, because these references largely disregard the evidence of record." (*Id.* at p. 15).

Because Plaintiff applied for benefits in June 2018 (A.R. 15), certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source. . .and 'explain how [it]

considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted). As provided by the regulations,

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.

*Id.* at 791-92 (internal citations omitted).

Keeping these standards in mind, the Court now considers whether the ALJ provided legally sufficient reasons to discount Dr. Voyle's opinion regarding the degree of limitation caused by Plaintiff's impairments.

In a March 2019 RFC questionnaire, Dr. Voyle opined that Plaintiff could only handle objects by grasping, turning, or twisting with his right hand five percent of the time during an eight hour workday and could only finely manipulate with his right hand ten percent of the time. (A.R. 554). As for Plaintiff's left hand, Dr. Voyle stated that Plaintiff could spend zero time doing either activity. (*Id.*) Further, Dr. Voyle stated that Plaintiff could only sit, stand or walk for ten minutes at a time, and only sit a total of four hours and stand or walk for a total of two hours during an eight hour workday. (A.R. 553). After discussing the medical evidence on record, the ALJ evaluated the medical opinion of Dr. Voyles as follows:

> The claimant's own medical source, Stephanie Voyles, MD completed a residual functional capacity questionnaire dated March of 2019 (Exhibit 8F, pp. 1-3). She opined the claimant could sit for 10 minutes at a time for a total of four hours and stand/walk for 10 minutes at a time for a total of two hours in an eight-hour workday (Exhibit 8F, p. 1). He needed to shift positions at will, and would need to take unscheduled breaks every hour for 15 minutes (Exhibit 8F, p. 1). She opined the claimant could frequently lift and carry less than 10 pounds and occasionally lift and carry up to 20 pounds (Exhibit 8F, p. 2). On the right, he could handle five percent of the day, perform fine manipulation 10 percent of the day, and reach 25 percent of the day, with no handling or fine manipulation on the left and reaching only five percent of the day on the left (Exhibit 8F, p. 2). In addition, Dr. Voyles opined that the claimant would miss more than four days per month (Exhibit 8F, p. 2). She indicated she had treated the claimant since January 2017 (Exhibit 8F, p. 3). The undersigned finds this opinion is overly restrictive. While the claimant does have symptoms radiating and some reduced motor function to the left upper extremity, a complete restriction on handling and fine manipulation is not consistent with the examination findings indicating 4/5 grip strength. In addition, the limitations on standing and walking are not fully consistent with the claimant's allegation that he only uses a cane for ambulation sometimes. The undersigned notes that the record notes a normal gait in September of 2019 (Exhibit 18F, p. 9).

3

> While the record does support limits on postural activities and overhead reaching with the left upper extremity and lifting no more than 20 pounds, it does not support this disabling less than sedentary opinion.

(A.R. 22). Although the ALJ found Dr. Voyle's opinion regarding Plaintiff's limitations in postural activities, lifting, and overhead reaching to be supported by the record, the resulting RFC did not adopt limitations the ALJ found to be "overly restrictive." (*Id.*)

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs, and is never able to climb ladders, ropes, or scaffolds. The claimant can frequently balance and stoop, and occasionally crawl, crouch, and kneel. The claimant can occasionally reach overhead with the left upper extremity, and should not work in environments subjecting him to concentrated exposure to extreme cold or warm temperatures, or that would expose him to unprotected heights or machinery with dangerous, moving mechanical parts. Any ambulation in excess of 100 feet or over uneven terrain will require the use of a cane.

(A.R. 18).

The ALJ found Dr. Voyle's March 2019 opinion to be unpersuasive because it was not consistent with examination findings or Plaintiff's own testimony. (A.R. 22). This reasoning invokes the consistency factor, which considers the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim.

First, the ALJ noted that the recommended upper extremity restrictions were not consistent with Plaintiff's 4/5 grip strength. (A.R. 22). Elsewhere in the decision, the ALJ discussed an August 2019 neurosurgical physical exam that "indicated range of motion with pain and restriction in the neck, full motor strength, except for 4/5 in grip strength, and sensation in the left upper extremity was intact." (A.R. 21 (citing A.R. 641)). Plaintiff argues that an ALJ "may not discredit an opinion by referencing normal findings that are unrelated to the basis for the opinion." (ECF No. 11, p. 14). However, grip strength is relevant to an individual's ability to handle and perform fine manipulation. *See Lewis v. Comm'r of Soc. Sec.*, No. 1:21-cv-01243-ADA-SAB, 2023 WL 2182464, at *8 (E.D. Cal. Feb. 23, 2023) ("More specifically, the Court notes Dr. Quinlan bases his opinion on findings of both 'impaired use of hands' and 'impair[ed] grabbing with hands...', [t]hus, it appears the ALJ's findings relating to Plaintiff's grip strength directly address Dr. Quinlan's finding that Plaintiff's rheumatoid arthritis 'impairs grabbing.'")

4

(internal citations omitted); *Daniel K. v. Kijakazi*, No. 4:20-cv-05115-EFS, 2021 WL 5240503, at *12 (E.D. Wash. July 29, 2021) ("This explanation, albeit terse, allows this Court to discern the ALJ's conclusions regarding the supportability of Dr. Drenguis's manipulative limitation—the ALJ concluded the most relevant evidence was evidence of grip strength, and that evidence supported a frequent [handling, fingering, and feeling] limitation rather than a more restrictive occasional limitation."). Accordingly, the ALJ reasonably concluded that Plaintiff's slightly diminished grip strength was inconsistent with Dr. Voyle's opinion that Plaintiff could only handle with his right hand five percent of the day, perform fine manipulation with his right hand ten percent of the day, and could not handle or perform fine manipulation with his left hand for any length of time. While Plaintiff argues that Plaintiff's diminished grip strength and other medical findings could support Dr. Voyle's handling and manipulation limitations, this at most amounts to another rational interpretation of the evidence, which is not sufficient to conclude that the ALJ erred. *See Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

As for Dr. Voyle's opinion regarding Plaintiff's ability to stand and walk during an eight-hour workday, the ALJ found the recommended limitations to be inconsistent with a September 2019 examination note indicating Plaintiff's normal gait. (A.R. 22) (citing A.R. 676 ("Patient ambulates without a device. Gait of the patient is normal.")). Plaintiff contends that the ALJ ignored significant medical findings that Plaintiff experienced antalgic or limping gait, lower extremity edema, sensory loss, and loss of balance. A review of the ALJ's decision indicates that the ALJ did consider and discuss such findings, including Plaintiff's limping gait in December 2016 before Plaintiff received knee surgery in January 2017 (A.R. 19 (citing A.R. 511)), numbness in feet (A.R. 21 (citing 654)), and lower extremity loss of sensation and edema (A.R. 21 (citing A.R. 708)). The ALJ also noted that Plaintiff displayed full motor strength with no atrophy in May 2018 (A.R. 20 (citing to A.R. 452)), normal gait in October 2018 (A.R. 20 (citing to A.R. 487)), normal gait in March 2019 (A.R. 20 (citing to A.R. 593), and was "easily able to get up from a chair and walk a normal speed to the exam room, don and doff his shoes and socks, and get on and off the exam table" during an August 2018 examination where Plaintiff also

displayed normal gait (A.R. 21 (citing to A.R. 557-58)). The ALJ's assessment of Dr. Voyle's opinion is reasonable considering these records. *See Queen v. Saul*, No. 1:19-cv-01694-JLT, 2021 WL 460503, at *4 (E.D. Cal. Dec. 9, 2021) (concluding that records showing normal gait can support an ALJ's rejection of standing and walking limitations).

Additionally, the ALJ noted the recommended standing and walking restrictions were somewhat inconsistent with Plaintiff's hearing testimony that he only uses a cane for ambulation "sometimes." (A.R. 22). Plaintiff argues this testimony is not inconsistent because Plaintiff also testified that he does not often leave the house or walk and so "[i]t stands to reason that if he attempted to stand and walk for longer periods, his need for a cane would likewise increase." (ECF No. 11, p. 15). However, when discussing the state consultative examiner's opinion that Plaintiff be "limited to a light range of work with the use of an assistive device for prolonged ambulation and uneven terrain," the ALJ found this opinion persuasive because it was consistent with Plaintiff's testimony about his cane use as well as his reported daily activities indicating that Plaintiff performs "housework, cares for pets, and assists with his children." (A.R. 23). The ALJ then accounted for some of the limitations assessed by Dr. Voyle pertaining to Plaintiff's ability to stand and walk by providing in the RFC assessment that "[a]ny ambulation in excess of 100 feet or over uneven terrain will require the use of a cane." Accordingly, the ALJ reasonably concluded that Plaintiff's statements regarding his cane use and daily activities, along with the medical evidence discussed above, were inconsistent with Dr. Voyle's opinion about more severe functional limitations.

Lastly, it is worth noting that the ALJ also discounted as "overly optimistic considering the overall record," the medical opinion of consultative medical examiner, Roger Wagner, M.D., who opined that Plaintiff "could stand and walk up to six hours and sit without limitation with normal breaks in an eight-hour workday." (A.R. 22). This indicates that the ALJ considered Dr. Wagner's opinion that Plaintiff could perform a greater range of work activities against the evidence supporting and consistent with many of the limitations identified by Dr. Voyle.

Based on the above, the Court concludes the ALJ provided legally sufficient reasons to partially discount Dr. Voyle's opinion.

\\\

**B.     Subjective Symptom Testimony**

Plaintiff also challenges the ALJ's decision to the extent it discounted Plaintiff's subjective symptom testimony. (ECF No. 11, pp. 16-18).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

The ALJ stated as follows regarding Plaintiff's subjective symptom testimony:

> The claimant testified that he is unable to work because of limitations on walking and lifting over 20 pounds. He said he has trouble with repetition of activities and for the last couple years sometimes he needs a cane to walk. He said his doctor gave him a cane and a brace. He does not leave his home often. He sometimes picks his daughter up from school and he waters the lawn, but he cannot mow or weed. He is limited in walking because of pounding in his feet. He has inserts for his shoes. His feet go numb and he feels a pins and needles sensation. He cannot stay on his feet, but he also has issues with his upper extremities. He had injections in his neck and shoulder and three fingers. His right arm is okay, but his left arm is limited.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because although the record does indicate that the claimant would be precluded from performing his past work as a carpenter, his condition does not appear to preclude all work. The undersigned notes that the claimant performs a wide range of activities including caring for his

>pets, household chores, cleaning the kitchen, and taking his girls to practice (Exhibit 5E, p. 2). Although there is reference to a cane for ambulation, the claimant testified that he only uses it occasionally.

(A.R. 19).

The Court finds that the ALJ adequately explained his reasons for not fully crediting Plaintiff's subjective symptom testimony. As discussed above, the ALJ's RFC assessment took into account many of Plaintiff's purported limitations, including that Plaintiff be limited to light work, which is statutorily defined as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds…a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Further, the ALJ accounted for Plaintiff's testimony that his "left arm is limited" by including in the RFC that Plaintiff "can occasionally reach overhead with the left upper extremity." (A.R. 19, 18). However, the ALJ did not accept Plaintiff's allegations regarding his inability to work due to walking limitations and because he cannot stay on his feet. In particular, the ALJ explained that Plaintiff's allegations that he is precluded from all work were not consistent with Plaintiff's reported daily activities, such as "caring for pets, household chores, cleaning the kitchen, and taking his girls to practice." (A.R. 19 citign 5Ep2). Although Plaintiff contends that his reported daily activities are not inconsistent with Plaintiff's alleged inability to work, the ALJ properly considered Plaintiff's reported daily living activities in his credibility analysis. *See Burch v. Banhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities.").

Moreover, the ALJ did not solely rely on Plaintiff's reported daily activities in discounting Plaintiff's testimony. As discussed above, the ALJ addressed Plaintiff's alleged standing and walking limitations by citing to pertinent records that reflected Plaintiff's functional ability to perform light work, including evidence of Plaintiff's normal gait (A.R. 20 (citing A.R. 487, 593); A.R. 21 (citing A.R. 593, 557-58)), normal motor strength (A.R. 20 (citing to A.R. 452); A.R. 21 (citing A.R. 672)), intact sensation (A.R. 21 (citing A.R. 672)), and normal range of motion (A.R. 21 (citing A.R. 559)). Plaintiff argues that the ALJ merely summarized Plaintiff's treatment

history instead of identifying clear and convincing reasons to discount Plaintiff's symptom testimony. However, in several places throughout the decision, the ALJ adequately addressed the inconsistencies between the medical records, which generally reported normal results and good recovery following Plaintiff's knee surgery, and the general allegation that Plaintiff was unable to work. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (noting that conflicts between testimony and objective medical evidence supported discounting a plaintiff's credibility).

After consideration, the Court finds that the ALJ's reasons for not fully crediting Plaintiff's symptom testimony were legally sufficient.

## II.     CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is AFFIRMED. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:     **May 30, 2023**                              /s/ Erica P. Grosjean
                                                          UNITED STATES MAGISTRATE JUDGE

9